UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
JOHN PITRE,                                              :      **MEMORANDUM**
                                                         :      **DECISION AND ORDER**
                                      Petitioner,        :
                                                         :       16 Civ. 6258 (BMC)
                     - against -                         :
                                                         :
                                                         :
SUPERINTENDENT GRIFFIN,                                  :
                                                         :
                                      Respondent.        :
-------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, setting aside his conviction for second degree murder and first degree drug possession, for which he was sentenced to consecutive terms of 25 years to life and 23 years, respectively. This was the result of his second trial; the first trial, which was only on the murder charge, resulted in a hung jury. The murder and drug indictments were thereafter consolidated, resulting in the conviction that is the subject of this action.

The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, the crimes arose out of an argument on the street where a witness, Jacinto Sanchez, saw petitioner stab the victim, Sarid Morgan, to death, and then moments later, two other individuals, Shatia Rodriguez and Shawn Autry, who knew the victim, heard petitioner boast about it. Sanchez called 911 and the police arrived almost immediately. Rodriguez identified petitioner, who was still on the scene, as the assailant, and the police gave chase when petitioner fled to his apartment. The police forcibly entered petitioner's apartment after he attempted to deflect them and then refused to let them in to his apartment. Once inside, the

police found a large, sales-quantity volume of heroin. Sanchez and Autry both picked petitioner out of a lineup and confirmed their identification of petitioner at trial.

Petitioner raises four points of error: (1) ineffective assistance of appellate counsel for failing to raise several arguments; (2) Confrontation Clause violations resulting from the use of testimony from petitioner's first trial and the live testimony of a DNA expert that did not conduct the DNA analyses about which he was testifying; (3) insufficient evidence to sustain either the murder or drug convictions; and (4) violation of petitioner's due process rights when the trial court allowed both a father and his daughter to serve on the jury.  Each of these points is either procedurally barred from habeas corpus review or without merit and, accordingly, the petition is denied.

## I.         Ineffective Assistance of Appellate Counsel

In his habeas petition, petitioner asserts that his appellate counsel was ineffective because he failed to challenge: (1) the trial court's decision to consolidate the drug and murder charges; (2) the use of a witness's testimony from the first trial as violating his right to confrontation under the Sixth Amendment; and (3) the trial court's failure to meaningfully respond to a jury note.  Petitioner had previously brought a *coram nobis* motion challenging his conviction on the ground that his appellate counsel omitted these three strong arguments on direct appeal in favor of two weaker arguments.[1]  The Appellate Division summarily denied this motion on the merits.

---

[1] The habeas corpus petition also asserts a fourth ineffective assistance of appellate counsel claim – that trial counsel was ineffective for failing to challenge the seating of a juror who was the father of a juror who had already been seated.  That claim was not raised in petitioner's *coram nobis* motion and thus is unexhausted.  However, petitioner had asserted in his *pro se* brief on direct appeal that this was a statutory and due process violation.  The Appellate Division rejected that claim as unpreserved because petitioner's trial counsel had not objected, and alternatively held that the claim was without merit. People v. Pitre, 108 A.D.3d 643, 644, 968 N.Y.S.2d 585, 587 (2d Dep't 2013), leave to app. denied, 23 N.Y.3d 966, 988 N.Y.S.2d 574 (2014).  I address this claim below.  However, as to using it as a basis for an unexhausted claim of ineffective assistance of appellate counsel, it plainly fails.  Even if appellate counsel had raised the claim that petitioner says he should have raised, we know that it would have been rejected on the merits based on the Appellate Division's alternative holding.  Petitioner, thus, suffered no prejudice.  Therefore,

People v. Pitre, 133 A.D.3d 792, 19 N.Y.S.3d 189 (2d Dep't 2015), leave to app. denied, 26 N.Y.3d 1148, 32 N.Y.S.3d 63 (2016).

Since the Appellate Division rejected this claim on the merits, my review of that decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). AEDPA provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has held that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. . . ." Ryan v. Gonzales, 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 786 (2011)). State court decisions must "'be given the benefit of the doubt,'" Felkner v. Jackson, 562 U.S. 594, 598, 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's

---

notwithstanding that the claim against petitioner's appellate counsel is unexhausted, I reject it as plainly without merit as well. See Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528 (2005).

contrary conclusion was unreasonable." Harrington, 562 U.S. at 102, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, 132 S. Ct. 2148 (2012).

To show a Sixth Amendment violation of effective assistance of appellate counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, he must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688, 104 S. Ct. at 2064-65. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted). Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669, 104 S. Ct. at 2055-56. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112, 131 S. Ct. at 792.

Although Strickland speaks to ineffective assistance of trial counsel claims, it is equally applicable to claims of ineffective assistance of appellate counsel. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "On appeal,

counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims. . . . [I]nadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." King v. Greiner, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (citing Jones v. Barnes, 463 U.S. 745, 751-53, 103 S. Ct. 3308, 3312-14 (1983)). But a petitioner may not rebut the presumption of effective assistance by simply arguing that appellate counsel's decision to raise certain issues, and not others, constitutes ineffectiveness. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Appellate counsel is not required to "press nonfrivolous points . . . if counsel, as a matter of professional judgment, decides not to present those points." Jones, 463 U.S. at 751, 103 S. Ct. at 3312; see also Knowles v. Mirzayance, 556 U.S. 111, 127, 129 S. Ct. 1411, 1422 (2009) ("The law does not require counsel to raise every available nonfrivolous defense"). A petitioner must prove that there is a reasonable probability that the unraised claims would have succeeded. King, 210 F. Supp. 2d at 182-83 (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)).

### A. Consolidation of Murder and Drug Chargers

As noted above, petitioner's first trial, which resulted in a hung jury, was only on the murder charge. Apparently, the prosecution had intended to try the drug charge separately thereafter had petitioner been convicted. But after the mistrial on the murder charge, the prosecution apparently moved to consolidate the charges. (I have to say "apparently," because there is no such motion in the record, but it is a solid inference for reasons shown below.)

Petitioner, in his *coram nobis* motion to the Appellate Division, argued that his appellate counsel was ineffective for not including a challenge to the trial court's decision to allow a single trial on both the murder and drug charges in his brief on direct appeal. He annexed a letter to his

brief that he had received from appellate counsel, prior to filing his brief on direct appeal, in which appellate counsel assured petitioner that, "I will argue that it was improper for the court to grant the District Attorney's motion to consolidate the homicide and drug charges and to permit them to be tried together before one jury." However, the brief that appellate counsel filed contained no such argument. This was the essence of petitioner's ineffective assistance argument.

In response to petitioner's *coram nobis* motion attacking appellate counsel's failure to raise the point that he had said he would raise, the District Attorney primarily argued that the trial judge acted within his discretion in ordering consolidation. This response did not address the issue of why appellate counsel didn't at least make the argument, except, I suppose, by implicitly suggesting that appellate counsel was not objectively unreasonable and that petitioner was not prejudiced by counsel's decision not to pursue the argument. But by focusing only on the discretion involved in making a decision to permit consolidation, the District Attorney missed the point.

The better argument, to which the District Attorney alluded to only obliquely, was to point out that, in fact, trial counsel had made a deliberate strategic decision to withdraw his opposition to consolidation, and consolidation had therefore occurred on consent. In the beginning of the second trial, the trial judge, noting that only the murder case had been tried before, asked, "Let me just clarify one thing. Since the last trial, another indictment was voted, a class A2 felony," to which petitioner's trial counsel responded, "The other indictment, Judge, existed at the time of the first trial. They chose to go forward with the homicide first. Since that trial the cases have been consolidated." The trial court responded, "So they will be tried

6

together," and both attorneys confirmed that this was correct. In this manner, the attorneys effectively stipulated to the consolidated indictment without any ruling at all.

Further, as part of the District Attorney's opposition to the *coram nobis* motion, the District Attorney submitted an affidavit from a colleague of petitioner's Legal Aid appellate lawyer (why it was not submitted by petitioner's appellate lawyer himself is not explained), stating that after petitioner's appellate lawyer had expressed his intention to raise the consolidation issue in the letter that petitioner submitted, he had written petitioner a subsequent letter. In that subsequent letter (which the affidavit merely summarized as opposed to quoting or attaching as an exhibit), petitioner's appellate lawyer apparently advised him that he had spoken to petitioner's trial attorney, who informed him that the defense had waived the opposition to consolidation as "a matter of strategy."

The affidavit then explained that trial counsel had informed appellate counsel that "after the People told [trial] counsel that they would try the drug possession case first if the court denied consolidation, *counsel determined that it would be better for the defense to have the charges tried together*") (emphasis added). Thus, based on the affidavit, it appears that petitioner's trial attorney advised petitioner's appellate attorney that he had consented to consolidation, and withdrew his motion opposing consolidation, to avoid having the drug possession charge tried first, as the District Attorney had threatened.

Petitioner's trial counsel apparently (again, I have to say "apparently") concluded that a consolidated trial on both the drug and murder charges was preferable to having the murder trial subsequent to the drug trial because: (1) there was a better chance of getting a "split" verdict, i.e., a conviction on the less serious drug charge but an acquittal on the murder charge, if the charges were tried together; and (2) he did not want to risk having petitioner go into a murder trial after

having been convicted of major drug possession arising out of the same incident, especially since, as ultimately occurred, petitioner wanted to testify on his own behalf. Although I am drawing these inferences from the brief language quoted above in the affidavit, I do not think that this is any great stretch, as it would be a fairly straightforward trial strategy once the District Attorney advised that he was going to try the drug charge first if the charges were not consolidated.

The District Attorney's opposition to the *coram nobis* motion, however, failed to capture this point and instead argued that appellate counsel's decision not to challenge the trial court's ruling was reasonable because the trial court had acted within its discretion. Again, this argument missed the mark; appellate counsel was reasonable in not challenging the trial court's "ruling" because trial counsel had consented to the consolidation and thus there was no trial court ruling to challenge – there was merely acquiescence in defense counsel's strategy. [2]

Although both petitioner's and the District Attorney's arguments on *coram nobis* misstated the real issue, the Appellate Division's summary order, denying the motion on the

---

[2] Prior to bringing his *coram nobis* motion, petitioner had brought a §440 motion, contending that his trial counsel was ineffective because he never opposed the prosecutor's motion to file a consolidated indictment. The §440 court denied the motion, accepting the District Attorney's arguments that the claim was procedurally barred because it should have been raised on direct appeal, and, alternatively, that the claim had no merit because, as evidenced by an exhibit to the District Attorney's opposition, petitioner's trial counsel had indeed filed a motion opposing consolidation.

The District Attorney, again giving the court an inaccurate picture of what had occurred, never told the §440 court that trial counsel had later withdrawn that motion and consented to consolidation. Arguably, petitioner's §440 motion could have been seen in a different light if the District Attorney had disclosed the complete story because, in fact, his attorney did do what petitioner accused him of doing – failing to oppose, albeit by consenting to, consolidation – he just didn't do it in the way petitioner accused him of doing it.

Petitioner has not challenged his trial counsel's consent to consolidation – the issue he unsuccessfully raised in his §440 motion – in this habeas corpus proceeding. Even if he did, and even without the procedural bar, habeas corpus relief would not be warranted because, as described above, the threat of trying the drug case first in the absence of consolidation formed a reasonable strategic basis for trial counsel's change of decision, thus bringing it within the standard tolerated under <u>Strickland</u>. But there is an irony in the fact that petitioner lost the merits of his §440 motion because his trial counsel had in fact opposed consolidation, and then lost his *coram nobis* motion because his trial counsel had later consented to consolidation. I frankly do not understand, and cannot condone, the District Attorney's failure to give either of the state courts the complete picture of what had occurred.

merits and finding no error in appellate counsel's decision to back away from his initial letter to petitioner and not contend that the trial court had erred in consolidating the charges, is obviously correct without even considering the restrictive review standard under AEDPA. There was no way that appellate counsel had a colorable argument challenging the trial court's "ruling" to consolidate, which was how petitioner characterized the issue, because the trial court's consolidation was on consent as the result of a strategic decision by trial counsel. The Appellate Division's decision to deny *coram nobis* relief was therefore neither contrary to, nor an unreasonable application of, any Supreme Court authority.

### B. Use of Testimony from First Trial

At petitioner's first trial, a witness named Sean Autry testified that he had been walking with his girlfriend, Shatia Rodriguez, who was going to buy illegal drugs, when they observed petitioner standing in a doorway performing a lewd act on himself. When Autry and Rodriguez returned and passed by petitioner again a few minutes later, petitioner made inappropriate remarks to Rodriguez. After Autry reprimanded him, petitioner, according to Autry, said, "don't misunderstand, I am just enjoying myself, I just killed somebody and got away with it."

Rodriguez then observed the stabbing victim, who she and Autry knew, lying nearby in the street, and they tried to assist and console the victim. The police then arrived. When Rodriguez pointed out petitioner, who was still at the scene, to the police, petitioner fled. Autry confirmed that he picked petitioner out of a lineup that same day.

In petitioner's second trial, Autry refused to testify. He did not invoke his right against self-incrimination; he simply insisted that he did not want to be involved. The trial judge placed Autry on the stand, swore him in, appointed a lawyer to consult with him (who, one can infer from the colloquy, advised him that he had no right not to testify unless he could invoke his Fifth

Amendment privilege, which he did not), ordered him to testify, and warned him that he would be held in contempt and likely serve additional jail time if he continued to refuse to testify. (Autry was already in custody on unrelated charges.) Autry, however, remained steadfast. Over defense counsel's objection, the Court then granted the prosecutor's motion to read Autry's testimony from the first trial, as summarized above, into the record.

In his *coram nobis* motion, petitioner argued that the use of Autry's testimony from the first trial violated his right to confrontation under the Sixth Amendment, and that his appellate counsel was ineffective for not raising that issue on appeal. However, his appellate counsel's decision not to raise this point on appeal was perfectly reasonable under the <u>Strickland</u> standard governing claims of ineffective assistance of counsel, and thus the Appellate Division's denial of this claim was clearly reasonable under the deferential AEDPA standard of review.

First, it does not appear that trial counsel preserved the point as no objection to using the prior testimony appears in the record. Petitioner's trial counsel merely requested that the trial court make it clear to the jury that petitioner had nothing to do with Autry's non-availability, which it did. Thus, if appellate counsel had raised this argument, it would have been rejected as unpreserved.

Second, the reason there was no objection was likely that the law is clear that a witness who flatly refuses to testify is deemed unavailable (<u>cf.</u> Fed. R. Civ. 804(a)(2) ("A declarant is considered to be unavailable as a witness if the declarant . . . refuses to testify about the subject matter despite a court order to do so."), and the admission of the prior testimony of an unavailable witness that has previously been cross-examined by a defendant in a case in which his interest was substantially the same – here, petitioner's first trial – does not violate the defendant's right to confrontation because he has already confronted the witness. <u>See</u> <u>Giles v.</u>

California, 554 U.S. 353, 358, 128 S. Ct. 2678, 2682 (2008) ("The [Sixth] Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him."); Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374 (2003) ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a *prior opportunity* for cross-examination.") (emphasis added); California v. Green, 399 U.S. 149, 165, 90 S. Ct. 1930, 1938 (1970) ("We also think that [the witness's] preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For [the witness's] statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial."). Thus, there was no merit to this claim on *coram nobis* at all.

### C. Trial Court's Failure to Meaningfully Respond to a Jury Note

During deliberations, ten minutes before a lunch break, the trial court received a note from the jury asking for a readback of a portion of two witness's testimony. The court attempted to extract the requested testimony, but while it was doing so, about 90 minutes later, it received another note: "The jury has come up with a verdict. We would like to decline prior requests of hearing any testimony."

The trial court read both notes to the attorneys in open court, and then directed that the jury be brought back in. There was clearly a pause, although of unknown duration, while that occurred, but neither attorney said anything. The jury entered the courtroom, and the Clerk noted on the record that they were present and properly seated. The trial court inquired if the

attorneys waived the reading of the jury roll, and both attorneys responded affirmatively. The trial court then read both notes to the jury, and expressed its view, as the second note had requested, that the "last note controls." It then received the verdict by individually polling the jurors.

In his *coram nobis* motion, petitioner contended that the trial court had committed what he called a "mode of proceedings error," because it failed to advise the jury, as soon as it received the first note, that it would proceed to extract the requested testimony, and that it failed to read the requested testimony to the jury before receiving its verdict. Petitioner further contended that his appellate counsel was ineffective for not raising this claim on direct appeal.

It is obvious that petitioner had attempted to classify this incident as a "mode of proceedings" error because his counsel never objected to the procedure that the trial court used, and under New York practice, an error classified as a "mode of proceedings" error does not require preservation for appeal. See People v. Gray, 86 N.Y.2d 10, 21, N.Y.S.2d 173, 176 (1995).

Even though petitioner tried to squeeze his claim into a mode of proceedings error to avoid the procedural bar, the substance of his argument was that the trial court's failure to provide the jury's readback requests, or, at least, to "meaningfully respond" to the jury's first note, provided a derivative basis for challenging his appellate counsel as ineffective. This argument was sufficiently convoluted that his appellate counsel cannot be faulted on federal habeas corpus review for choosing not to raise it. This is especially so because of the double level of deference arising from the combination of Strickland and AEDPA.

First, the transcript clearly establishes that petitioner's counsel had sufficient notice of the jury note before the trial court received the verdict and could have objected, both before the jury

was brought in or even at sidebar once it was brought in, to receiving the verdict without first addressing the note.  Petitioner's counsel, however, chose to simply stand by and waive the roll call of the jury.  New York courts find a mode of proceedings error in this situation only where counsel is not given meaningful notice and an opportunity to object.  See People v. Mack, 27 N.Y.3d 534, 541, 36 N.Y.S.3d 68, 74 (2016).  Thus, petitioner's effort to characterize the exchange as a mode of proceedings error would likely have failed as a matter of New York law.

Second, petitioner's "mode of proceedings" claim was all the more likely to fail because, of all the cases where this jury question/verdict scenario has occurred, and it seems to occur with some regularity, see, e.g., People v. Nealon, 26 N.Y.3d 152, 20 N.Y.S.3d 315 (2015); People v. Silva, 24 N.Y.3d 294, 998 N.Y.S.2d 154 (2014); People v. Lourido, 70 N.Y.2d 428, 522 N.Y.S.2d 98 (1987); People v. Murphy, 133 A.D.3d 690, 20 N.Y.S.3d 127 (2d Dep't 2015); People v. Sorrell, 108 A.D.3d 787, 969 N.Y.2d 198 (3d Dep't 2013); People v. Cornado, 60 A.D.3d 450, 874 N.Y.S.2d 463 (1st Dep't 2009); People v. Williams, 221 A.D.2d 246, 634 N.Y.S.2d 459 (1st Dep't 1995), this is the only case I have seen where the jury affirmatively withdrew its request in the first note by an affirmative direction in the verdict note.  The jury's express announcement as to its intent to abandon its prior request would have greatly weakened any argument appellate counsel might have made that the trial court should have proceeded on a different path, because to comply with the request in the first note would have meant disregarding the direction in the second note.

Third, shortly after the New York Court of Appeals denied leave to appeal the Appellate Division's decision rejecting petitioner's *coram nobis* motion, the New York Court of Appeals held that a trial court's failure to respond to a jury note prior to receiving another note announcing that a verdict has been reached does not itself constitute a mode of proceedings error.

13

Therefore, if counsel did not object to the non-response, the claim is unpreserved for appeal. See Mack, 27 N.Y.3d at 542, 36 N.Y.S.3d at 75. In Mack, the Court of Appeals made clear that a court should follow a two-step process when it receives a jury note: (1) give counsel notice that a note has been received; and (2) meaningfully respond to the note. Failure to follow either one of these steps does not constitute a mode of proceedings error unless defense counsel is deprived of the opportunity to object to either step. Indeed, the facts in Mack are materially indistinguishable from the instant case. Thus, not only was petitioner's appellate counsel objectively reasonable in choosing not to raise this argument – he was somewhat prescient.

There is, therefore, no basis for finding constitutional error in the Appellate Division's rejection of petitioner's arguments on *coram nobis*.

## II. DNA Analysis Confrontation Clause Claims

At the second trial, the prosecution called a criminalist, Dr. David Fisher, from the Office of the Chief Medical Examiner, who was certified as an expert in forensic biology and DNA analysis. Dr. Fisher made a comparison of several DNA profiles generated by different analysts in the Medical Examiner's Office.

As a control sample, Dr. Fisher used the DNA profile of the victim, Morgan, which was generated from blood collected during his autopsy. Dr. Fisher compared the control sample to DNA analyses done on several blood stains found on petitioner's shirt and jeans, which the police had collected from petitioner at the time of his arrest. Dr. Fisher concluded that one of the stains on petitioner's jeans contained a mixture of DNA from the victim and an unidentified individual, and a second stain on petitioner's jeans contained only the victim's DNA.

On cross-examination, Dr. Fisher acknowledged that he had reached the same conclusions as Dr. Lansky, another analyst who worked under Dr. Fisher and previously

rendered a report making the same comparisons, but Dr. Fisher maintained that he had done an

independent analysis and reached his own conclusions. Dr. Fisher prepared a chart using the

results of the underlying DNA analyses to explain to the jury how he reached his conclusion that

the victim's DNA was on the clothing identified as belonging to petitioner. Significantly,

however, neither the DNA reports nor Dr. Lansky's analysis were received in evidence.

In his *pro se* brief on direct appeal, petitioner contended that the prosecution's exclusive

reliance on Dr. Fisher, and failure to call the analysts who had participated in creating the DNA

profiles from the victim's blood and the blood stains on petitioner's jeans, violated his rights

under the Confrontation Clause. Petitioner argued that the documents upon which Dr. Fisher

relied were testimonial because the sole purpose in creating the DNA analyses was for the

prosecution of petitioner. The Appellate Division held:

> The DNA profiles were not testimonial, but rather, were merely raw data that,
> standing alone, did not link the defendant to the crime. The connection of the
> defendant to the crime was made by the testimony of police officers establishing
> that the defendant was wearing the subject jeans when arrested, and of the DNA
> expert, who testified that, based on his analysis, the two subject DNA profiles
> matched.

Pitre, 108 A.D.3d at 644, 968 N.Y.S.2d at 587.

Because the Appellate Division decided this issue on the merits, my review is again

subject to the deferential standard under AEDPA described above. The relevant Supreme Court

authority on this issue is Williams v. Illinois, 132 S. Ct. 2221 (2012), which was decided after

petitioner's trial but about a year before the Appellate Division affirmed his conviction. In

Williams, a plurality of the Court rejected a Confrontation Clause challenge to the testimony of

an expert witness who had relied on DNA testing done by an unaffiliated laboratory, in which he

had no involvement, to perform his own DNA analysis.

There were two bases for the plurality's opinion. First, it held that since the laboratory report was not admitted into evidence, but merely testified to by the expert as the basis of his opinion, it was not offered for the "truth of the matter asserted" and thus could not give rise to a Confrontation Clause violation. Second, since the defendant had not yet been identified as a suspect at the time that the DNA testing was performed, the Court held that even if the report had been admitted into evidence, it would not pose a Confrontation Clause problem because the report was prepared primarily for investigative rather than prosecutorial purposes. Justice Thomas, concurring only in the judgment, actively disagreed with both bases for the plurality's decision, but provided a fifth vote on a completely different basis. Justice Thomas thought that there was no Confrontation Clause violation because the laboratory report "lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause." Id. at 2255 (Thomas, J., concurring).

My colleague Judge Block has perceptively observed that Williams is a particularly thin reed upon which to seek habeas corpus relief. See Washington v. Griffin, 142 F. Supp. 3d 291, 295 (E.D.N.Y. 2015). Because the Supreme Court was so badly fractured in its rationales, Judge Block has explained that it would be difficult to find that there is "clearly established federal law, as determined by the Supreme Court," as required under 28 U.S.C. § 2254(d)(1), against which a state court decision could be found deficient. Id. at 296-97. Indeed, in her dissent, Justice Kagan expressed that "[t]he five Justices who control the outcome of today's case agree on very little." Williams, 132 S. Ct. at 2277 (Kagan, J., dissenting). Judge Block also noted that the Second Circuit, even on direct review, has lamented that "Williams does not, as far as we can determine . . . yield a single, useful holding relevant to the case before us. It is therefore for our purposes

confined to the particular set of facts presented in that case." Id. at 295-96 (quoting United States

v. James, 712 F.3d 79, 95 (2d Cir. 2013).[3]

Nor does this case fall squarely within the Supreme Court's earlier Confrontation Clause

precedents of Bullcoming v. New Mexico, 564 U.S. 647, 131 S. Ct. 2705 (2011), and Melendez-

Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), such that the state court's decision

to permit Dr. Fisher's testimony can be found to be unreasonable.  First, in each of those cases,

the underlying laboratory reports, upon which the non-participating expert had based his opinion,

were admitted into evidence.  Here, however, the reports were never entered into evidence or

shown to the jury.  Second, the nature of each report in Melendez-Diaz and Bullcoming was

incriminating on its face.  See Bullcoming, 564 U.S. at 653, 131 S. Ct. at 2710 (lab report

showed a blood-alcohol level above legal limit); Melendez-Diaz, 557 U.S. at 308, 129 S. Ct. at

2530-31 (lab report confirmed that substance was cocaine).  In contrast, the DNA analyses upon

which Dr. Fisher relied in petitioner's case said nothing about whether petitioner was guilty or

innocent on their own; it took an expert on the witness stand, who was subject to cross

examination, to interpret the results and tie various pieces of evidence together to inculpate

petitioner.  Indeed, the plurality in Williams acknowledged that a DNA report is not "inherently

inculpatory."  132 S. Ct. at 2228.

These are sufficient distinguishing factors such that I cannot find that the state court's

decision to allow Dr. Fisher's testimony was contrary to or an unreasonable application of this

---

[3] Any argument that the state court unreasonably applied Williams because, unlike the defendant in Williams, petitioner had been a suspect at the time the underlying DNA analyses were performed fails.  The plurality's finding that, since the defendant was not in custody or a suspect, the primary purpose of the laboratory report was to catch a rapist, not prosecute the defendant, was only essential to its alternative holding – that even if the report had been admitted into evidence it would not have violated the Confrontation Clause.  Here, Dr. Lansky's report was not introduced into evidence, and thus the fact that petitioner was a suspect when the DNA analyses were completed is not determinative.

murky area of federal law.  As Justice Kagan expressed in her dissent, <u>Williams</u> leaves this area

of the law muddled, and AEDPA requires reasonable clarity if habeas relief is to be granted.

Here, petitioner had the opportunity to cross-examine the only expert that expressed an

opinion to the jury tying the victim's DNA to petitioner's clothing.  Dr. Fisher unequivocally

denied relying on anything but the data in the DNA samples extracted by lab technicians.  To the

extent Dr. Fisher lacked specific knowledge of whether the underlying tests upon which his

opinion depended were properly performed, that was an area which petitioner's counsel could,

and did, exploit as a basis to argue that the jury should discount Dr. Fisher's opinion.  At this

point in the development of the law on the right to confrontation over DNA testing, no Supreme

Court precedent requires more.[4]

### III.        Insufficient Evidence

Petitioner's represented brief on direct appeal raised four points that the Court combined

into two: (1) the verdict on the murder charge was (a) based on insufficient evidence and (b)

against the weight of the evidence; and (2) the verdict on the drug charge was (a) based on

insufficient evidence and (b) against the weight of the evidence.  Addressing both points

together, the Appellate Division held that:

> The defendant's challenge to the legal sufficiency of the evidence supporting his
> convictions is unpreserved for appellate review since he failed to move for a trial
> order of dismissal specifically directed at the errors he now claims.  In any event,
> viewing the evidence in the light most favorable to the prosecution, we find that it
> was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

---

[4] Petitioner also alleges that the admission of Autry's testimony in the second trial violated his rights under the
Confrontation Clause.  That claim is unexhausted because he did not raise it in state court, other than as the
predicate for his claim that appellate counsel was ineffective for not raising it on appeal.  However, because it is an
on-the-record claim that could only be raised on direct appeal, and petitioner has no opportunity for a further direct
appeal, the claim is deemed exhausted and procedurally barred.  <u>See</u> <u>Reyes v. Keane</u>, 118 F.3d 136, 139 ("[A] claim
is procedurally defaulted for the purposes of a federal habeas review 'where the petitioner failed to exhaust state
remedies and the court to which the petitioner would be required to present his claims in order to meet the
exhaustion requirement would now find the claims procedurally barred.'") (quoting <u>Coleman v. Thompson</u>, 501
U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991)).  In addition, as the analysis on his claim for ineffective
assistance of appellate counsel set forth above demonstrates, the claim is without merit.

Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence, we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor. Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence.

Pitre, 108 A.D.3d at 644, 968 N.Y.S.2d at 586-87.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 772, 729, 111 S. Ct. 2546, 2553 (1991) (emphasis omitted)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007).

State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)). If a state court rejects a specific claim on an adequate and independent procedural state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis omitted).

In the instant case, when the prosecution rested, defense counsel made a general motion to dismiss without stating any grounds other than "failure to make out a prima facie showing." At the close of the case, after the defense had called its own witnesses, defense counsel made an equally general motion stating only that "the People failed to meet their burden. . . ."

It is as firmly established and as regularly followed in New York practice as it could be that these kinds of generalized statements preserve nothing for review on appeal. See People v. Gray, 86 N.Y.2d 10, 629 N.Y.S.2d 173 (1995). To properly preserve a legal sufficiency challenge for appellate review, "a defendant must move for a trial order of dismissal, and the argument must be specifically directed at the error being urged." People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395, 399 (2008) (internal quotation marks and citation omitted). General motions to dismiss do not preserve unstated arguments. See, e.g., id.; Gray, 86 N.Y.2d at 20, 629 N.Y. S.2d at 176 ("The chief purpose of demanding notice through objection or motion in a trial court, as with any specific objection, is to bring the claim to the trial court's attention. A general motion fails at this task. As a practical matter, a general motion to dismiss is often no more helpful to the Trial Judge than would be a motion predicated on an erroneous ground.") (internal citations omitted).

In other words, defense counsel cannot simply state that the prosecution has failed to make its case; he must refer specifically to the element or elements that he claims are missing from the proof that has been introduced so that the trial judge does not have to comb through the record and do his work for him. The specific deficiencies identified by defense counsel, if rejected by the trial court, are preserved and form the basis for the argument on appeal. See Holguin v. Lee, No. 13-cv-1392, 2016 WL 1030129, at *4 (S.D.N.Y. March 10, 2016); Bethea v. Walsh, No. 09-cv-5037, 2016 WL 258639, at *39 (E.D.N.Y. Jan. 19, 2016); Brito v. Phillips,

485 F. Supp. 2d 357, 361-63 (S.D.N.Y. 2007).  Here, the motions made by defense counsel preserved nothing and thus the Appellate Division properly invoked a procedural bar.

Once a federal court determines that a claim is procedurally barred under state procedural rules, it may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or that the failure to consider the claim will result in a miscarriage of justice.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; Harris, 489 U.S. at 262, 109 S. Ct. at 1043.  The latter avenue, a miscarriage of justice, is reserved for extraordinary cases, such as where a constitutional violation results in the conviction of an individual that is actually innocent.  See Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel."  Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645) (alteration in original).  Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, see Murray, 477 U.S at 488-89, 106 S. Ct. at 2645-46, the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 1591-92 (2000).

Here, although petitioner raised several claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel, he never contended that trial counsel was ineffective for failing to preserve any legal insufficiency claims.  He therefore cannot rely on ineffective assistance of trial counsel as cause to excuse his procedural default.

In any event, such a claim could not succeed, for petitioner was not prejudiced by the general motion made by trial counsel.  In fact, defense counsel's argument in petitioner's represented brief on direct appeal only nominally raised an "insufficient evidence" claim. Virtually the entire argument on appeal was directed towards an "against the weight of the evidence" claim, which was logical considering that defense counsel had, indeed, placed contradictory evidence before the jury and had drawn the jury's attention to the credibility issues with parts of the prosecution's case.

It may be that trial counsel decided not to make a more specific insufficient evidence motion at trial appellate counsel decided not to include a thorough insufficient evidence claim in his brief because there was, in fact, plenty of evidence that, if accepted, would satisfy the prosecution's burden of proving defendant's guilt beyond a reasonable doubt: (1) an eyewitness, Sanchez, identified petitioner, both in court and in a lineup on the same day as the crime, as the person that he saw pulling a knife out of the victim's chest; (2) two other witnesses, Rodriguez and Autry, heard petitioner boast about stabbing the victim immediately after it occurred; (3) the police, arriving almost immediately after the stabbing and directing petitioner to halt, had to chase petitioner because he took off for his apartment; (4) the police, after breaking into petitioner's apartment, found a huge quantity of high potency heroin throughout, some of which was packaged for sale, plus drug sale paraphernalia, and a utility bill showing that petitioner was the account holder of the apartment; (5) petitioner admitted during police questioning that he had "f—d up" and "crossed the line"; and (6) blood found on petitioner's jeans matched the victim's DNA.

Petitioner did cast doubt on some of the prosecution's evidence.  He pointed out that the police never found the murder weapon or any trace of the victim's blood in his apartment,

despite Sanchez's, the eyewitness, testimony that there was blood on the knife and petitioner's hand when he withdrew the knife from the victim's chest. He also noted that when Sanchez described the perpetrator to the police, he indicated that the person had no tattoos, scars, or facial hair (which petitioner had and Sanchez could have seen because petitioner had been naked from the waist up, although Sanchez thought he had on a light shirt), and that Sanchez had been unable to identify him in court during petitioner's first trial. Finally, petitioner asserted that Rodriguez and Autry were lying about his boast for various reasons. The prosecution, however, had arguments responding to each of these points.

As can be seen, this was a case for the jury and petitioner's represented brief on appeal sensibly focused heavily on the "weight of the evidence" rather than legal insufficiency, and paid only lip service to the latter. Of course, a challenge to the weight of the evidence is not reviewable on a federal habeas corpus petition as it presents only an issue of state law. See Mobley v. Kirkpatrick, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding.") (citing, inter alia, Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence. . . .")); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. . . . Accordingly, the Court is precluded from considering the claim.") (internal quotation marks and citations omitted).

In sum, petitioner's weight of the evidence claim is not cognizable, his legal insufficiency claim is procedurally barred, and there is neither cause, prejudice, nor manifest injustice that would support setting aside the procedural bar.

## IV. Father-Daughter Jurors

Finally, in his habeas corpus petition, petitioner asserts that he was deprived of due process of law because the trial court allowed a father and his daughter to be seated on the jury, even though his trial counsel had failed to object. In his *pro se* brief on direct appeal, petitioner argued that New York Criminal Procedure Law § 270.20(1)(c) made this improper.

The daughter had been seated first and was challenged for cause, but that challenge had nothing to do with her father, who at that point remained only a prospective juror. The challenge as to the daughter was ultimately overruled. Then, when the father was subsequently questioned, he disclosed that his daughter had already been seated. There was discussion among counsel and the court, both on and off the record, about the unusual fact that a father and daughter were seated on the same jury, but no challenge was raised.

The Appellate Division held that petitioner's claim was "unpreserved for appellate review because the jurors' relationship was exposed during voir dire, but the defendant chose not to challenge it" and alternatively that "the prospective jurors' relationship was not one that implicates CPL 270.20(1)(c)." Pitre, 108 A.D.3d at 644, 968 N.Y.S.2d at 587.

### A. Exhaustion

Perhaps the most basic principle of federal habeas corpus law is that a petitioner must first exhaust his federal constitutional claims in state court to obtain review of those claims in federal court. This principle is codified in AEDPA, as it was in its immediate predecessor statutes. But even before the enactment of a statutory mandate, it had been firmly established

that federal courts should exercise their discretion to not entertain an application for a writ of habeas corpus until the state court has had an opportunity to review a petitioner's federal constitutional claims, which they have been deemed fully competent to do.  See, e.g., Picard v. Connor, 404 U.S. 270, 92 S. Ct. 509 (1971); Ex parte Royall, 117 U.S. 241, 6 S. Ct. 734 (1886).

The exhaustion requirement recognizes that although the States surrendered an aspect of their sovereignty in signing onto the federal constitution and agreeing to habeas corpus review, this federal power should be sensitively invoked, as it interferes with the States' right to administer their own criminal law and protect their citizens from criminal conduct, as well as their ability to measure the prosecution of that conduct against the demands of the U.S. Constitution.  "We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"  Picard, 404 U.S. at 275, 92 S. Ct. at 512 (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S. Ct. 587, 590 (1950)).

Therefore, to examine petitioner's claim that the Appellate Division's ruling denied him due process of law under the Fourteenth Amendment of the U.S. Constitution, I must first determine whether he has exhausted this federal constitutional claim.  To exhaust a federal constitutional claim, a petitioner must "fairly present" the claim to the highest state court available to him by either citing the "chapter and verse" of the federal constitutional provision on which he relies, or invoking any of several argumentative devices that implicitly rely upon a provision of the U.S. Constitution.  See Daye v. Attorney General of New York, 696 F.2d 186 (2d Cir. 1982) (en banc).

This case tests the rationale of the Second Circuit's decision in Reid v. Senkowski, 961 F.2d 374 (2d Cir. 1992), which, although a *per curiam* opinion, is the most frequently cited

authority in the Second Circuit for the liberal standard of exhaustion applied in this Circuit. In Reid, the petitioner's *pro se* supplemental brief to the Appellate Division challenged the trial court's refusal to give a missing witness charge under New York law, and relied exclusively on New York case law to make that argument. The Appellate Division held that the claim – along with several others that were undifferentiated – was "either unpreserved for appellate review or without merit." Id. at 377.

On Reid's petition for a writ of habeas corpus, the district court found that the missing witness charge claim had been briefed entirely as a matter of New York law and thus no federal claim had been exhausted. The Second Circuit disagreed, finding that the following references in the petitioner's brief were sufficient to fairly present, and therefore exhaust, a claim that the failure to give a missing witness charge deprived petitioner Reid of his right to due process under the Fourteenth Amendment to the U.S. Constitution: (1) the petitioner "framed the first question on appeal as '[w]hether appellant's right to due process of law was violated by the trial court's refusal' to provide a missing witness jury charge"; and (2) the petitioner's point heading to this argument cited to the Fourteenth Amendment of the U.S. Constitution. Id. at 376. Because the Appellate Division's "either/or" disposition of several issues without differentiation was unclear as to whether it had applied a procedural bar to the missing witness charge claim, the Second Circuit proceeded to examine the claim on the merits, which it ultimately rejected.

Petitioner's *pro se* brief to the Appellate Division in the instant case, although involving a state criminal procedure statute rather than state case law, has close similarities to the petitioner's *pro* se brief in Reid. Here, the entirety of petitioner's argument was directed at the state statute. He discussed its history, its purpose, and how its purpose would be thwarted by allowing a father and daughter to serve together on the jury. Indeed, his concluding paragraph stated: "This issue

presents a novel question of *statutory interpretation*, and Pitre invites the Court to explicate whether the father and daughter relationship rendered them grossly unsuitable for jury service upon the same jury panel in violation of *the language set forth in the statute* regarding consanguinity." (emphasis added).

There were, however, scattered references, actual or at least arguable, to the U.S. Constitution in his *pro se* brief. First, the preliminary statement described the brief as presenting "two constitutional issues," one of which was "based upon [an error] by the Court in allowing [the father and daughter jurors] to serve upon the same jury panel," that petitioner asserted was in "violation of Pitre's rights to Due Process of Law (USCA 14th Amen). . . ." Second, the point heading characterized the issue as:

> Whether the Court violated appellant's right to the Due Process of Law when it allowed jurors Dariana Jacquez and Gilberto Jacquez (Father and Daughter), to serve upon the same jury panel after the issue was brought to the Court's attention on the record, before the commencement of defendant-appellant's trial and the Court possessed adequate remedy pursuant to Criminal Procedure Law Statute §§ 270.20(1)(c), 270.35(1) to correct the potential for any prejudice.

Beyond these references, petitioner's brief also asserted that: "At a minimum, the consanguinity alone triggered a manifest presumption of bias and a constitutional duty on the part of the trial judge to investigate the underlying language of the legislatives [sic] intent."[5]

Comparing the references in petitioner's *pro se* Appellate Division brief here to those in Reid, Reid compels me to conclude that petitioner has exhausted his federal constitutional claim.

---

[5] Petitioner also included a "cf." cite, without discussion, to Remmer v. United States, 350 U.S. 377, 76 S. Ct. 425 (1956), which concerned the need to conduct a hearing when a juror is subjected to an outsider's attempt to bribe him. That case, however, could not have alerted the Appellate Division to any federal constitutional issue, as it was based on the Supreme Court's supervisory power over the lower federal courts, not on any provision of the U.S. Constitution. See Young v. Herring, 938 F.2d 543, 558 n.7 (5th Cir. 1991).

**B. Procedural Bar**

Notwithstanding the exhaustion of this claim, the Appellate Division's holding that the claim was unpreserved constitutes a procedural bar to review in this Court unless petitioner can show cause and prejudice to excuse the procedural bar or manifest injustice. See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. As explained above, although a claim of ineffective assistance of counsel can constitute cause to excuse a procedural bar, the claim of ineffective assistance of counsel must have itself been exhausted by following proper state procedure to preserve such a claim. See Edwards, 529 U.S. 446, 120 S. Ct. 1587. Failure to follow proper state procedure, resulting in the denial of the ineffective assistance claim on procedural grounds, will preclude habeas corpus review of both the ineffective assistance claim and the claim that has been barred, unless, of course, the petitioner can also show cause and prejudice, or manifest injustice for his failure to properly raise the ineffective assistance of counsel claim. Id. at 451-454, 120 S. Ct. 1591-93.

Applying Edwards to the instant case, petitioner has no grounds to overcome the procedural bar. Since, as the Appellate Division noted, his attorney's failure to object to seating the father and daughter on the same jury was evident on the record, New York procedure required petitioner to raise his attorney's ineffectiveness, as well as the alleged error itself, on direct appeal. See N.Y. Crim. Proc. § 440.10(2)(c); People v. Cooks, 67 N.Y.2d 100, 103, 500 N.Y.S.2d 503, 505 ("The purpose of [§ 440.10(2)] . . . is to prevent [§ 440.10] from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal."); see also Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the

defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.").

Petitioner did not do this. Instead, he later brought a motion pursuant to New York Criminal Procedure Law § 440 claiming that his trial counsel was ineffective for not making the objection at trial. Predictably, the § 440 court rejected that claim as procedurally barred because it should have been raised on direct appeal, and, alternatively, as without merit. Further, as noted above, although petitioner filed a *coram nobis* motion claiming that his appellate counsel was ineffective for failing to raise certain arguments on direct appeal, this was not one of them. Petitioner has therefore failed to properly raise his claim of ineffective assistance of counsel based on his attorney's failure to preserve this point. He has shown no other basis for cause and prejudice, or manifest injustice.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28 U.S.C. § 19l5(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917 (1962). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: Brooklyn, New York
      December 26, 2016

_____
                           U.S.D.J.